**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LESTER DAVIS | : | |
| 3002 Mario Lanza Blvd. | : | |
| Apartment X | : | |
| Philadelphia, PA 19153 | : | CASE NO.: |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION COMPLAINT |
| SIX FLAGS ENTERTAINMENT | : | |
| CORPORATION d/b/a SIX FLAGS and/or | : | |
| SIX FLAGS THEME PARKS | : | JURY TRIAL DEMANDED |
| 1000 Ballpark Way | : | |
| Arlington, Texas 76011 | : | |
| -AND- | : | |
| SIX FLAGS GREAT ADVENTURE, LLC | : | |
| c/o Corporation Service Company | : | |
| Princeton South Corporate Center, Suite 160 | | |
| 100 Charles Ewing BLVD | | |
| Ewing, NJ 08268 | | |
| -AND- | | |
| S&S – SANSEI TECHNOLOGIES | | |
| 2935 North 400 West | | |
| North Logan, UT 84341 | | |
| -AND- | | |
| S&S WORLDWIDE, INC. a/ka S&S | | |
| POWER INC. | | |
| 2935 North 400 West | | |
| North Logan, UT 84341 | | |
| -AND- | | |
| ROCKY MOUNTAIN CONSTRUCTION | | |
| GROUP, INC. d/b/a ROCKY MOUNTAIN | | |
| CONSTRUCTION | | |
| 1140 N Carissa Ct. | | |
| HAYDEN, ID 83835 | | |
| -AND- | | |
| JOHN / JANE DOES, NOS. 1-10 | | |
| -AND- | | |
| ABC CORPORATIONS, NOS 1-10 | | |
| Defendants. | | |

**AMENDED COMPLAINT**

Plaintiff, Lester Davis, brings this Civil Action Complaint against Defendants, Six Flags

Entertainment Corporation, Six Flags Great Adventure, LLC, S&S-Sansei Technologies, S&S Worldwide, Inc., and Rocky Mountain Construction Group, Inc. (collectively the "Defendants"), and avers as follows:

1.      This civil action arises out of series of injuries and damages suffered by Lester Davis suffered on the thrill ride, "The Joker", sold, marketed, manufactured, and designed by defendants, S&S-Sansei Technologies, S&S Worldwide, Inc., and Rocky Mountain Construction Group, Inc. (hereinafter sometimes collectively referred to as the "roller coaster defendants") while at an amusement park owned, operated, and maintained by defendants, Six Flags Entertainment Corporation and Six Flags Great Adventure, LLC.

## PARTIES

2.       Plaintiff, Lester Davis (hereinafter "**Mr. Davis**"), is an adult individual and citizen of the Commonwealth of Pennsylvania with his residence at 3002 Mario Lanza Blvd, Apartment X, in Philadelphia, PA 19153.

3.      Defendant, Six Flags Entertainment Corporation d/b/a Six Flags and/or Six Flags Theme Parks (hereinafter "**Six Flags**") is a corporation, partnership, limited partnership, limited liability company and/or other business entity with a principal place of business at 1000 Ballpark Way in Arlington, Texas 76011.

4.      Six Flags leased, owned, operated, managed, controlled, and/or possessed theme parks throughout the United States, including the property and theme park known as "Six Flags Great Adventure" at 1 Six Flags Blvd. in Jackson Township, New Jersey, 08527 where Mr. Davis was grievously injured on August 10, 2019.

5.      At all times material, Six Flags acted by and through its representatives, officers, employees, servants, agents, individuals, managers, and/or maintenance workers responsible for

the safe and orderly operation of park attractions at Six Flags Great Adventure where Mr. Davis was injured on August 10, 2019.

6.      Defendant, Six Flags Great Adventure, LLC (hereinafter "**Great Adventure**") is a corporation, partnership, limited partnership, limited liability company and/or other business entity with a principal place of business at 1 Six Flags Blvd. in Jackson Township, New Jersey, 08527.

7.      Great Adventure, leased, owned, operated, managed, controlled, and/or possessed the property and the thrill rides thereon, including "the Joker" at 1 Six Flags Blvd. in Jackson Township, New Jersey, 08527 where Mr. Davis was grievously injured on August 10, 2019.

8.      At all times material, Great Adventure acted by and through its employees, servants, agents, individuals, managers, ride operators, disability services office personnel, park attendants, and/or maintenance workers responsible for the safe and orderly operation of park attractions including the thrill ride, "the Joker", where Mr. Davis was injured on August 10, 2019.

9.      Defendant, S&S- Sansei Technologies (hereinafter "**SSTech**"), is a corporation, partnership, limited partnership, limited liability company and/or other business entity with a principal place of business at 2935 North 400 West in North Logan, Utah.

10.     SSTech sold, marketed, manufactured, and designed the thrill ride known as "the Joker" that injured Mr. Davis on August 10, 2019.

11.     Defendant, S&S Worldwide, Inc. (hereinafter "**SSWWI**"), is a corporation, partnership, limited partnership, limited liability company and/or other business entity with a principal place of business at 2935 North 400 West in North Logan, Utah.

12.     Alternative to and/or in addition to the preceding averments, SSWI sold, marketed, manufactured, and designed the thrill ride known as "the Joker" that injured Mr. Davis on August 10, 2019.

13.     Defendant, Rocky Mountain Construction Group, Inc. (hereinafter "**RMC**"), is a corporation, partnership, limited partnership, limited liability company and/or other business entity with a principal place of business at 1140 North Carissa Court in Hayden, Idaho, 83835.

14.     Alternative to and/or in addition to the preceding averments, RMC sold, marketed, manufactured, and designed the thrill ride known as "the Joker" that injured Mr. Davis on August 10, 2019.

15.     Defendant, John Doe and Jane Doe Nos. 1-5, are employees, servants, agents, individuals, managers, ride operators, disability services office personnel, park attendants, and/or maintenance workers responsible for the safe and orderly operation of park attractions who, upon information and belief, and at all times relevant and material hereto, were on site and acting within the course and scope of their duties during Mr. Davis' visit August 10, 2019 visit to Great Adventure in Jackson, New Jersey.

16.     Defendant, John Doe and Jane Doe Nos. 5-10 are individuals responsible for manufacturing, designing, selling and/or distributing the Joker ride and its component parts.

17.     Defendant, ABC Corporations, Nos. 1-5, are professional associations, partnerships, corporations, business entities and/or other organizations in the State of New Jersey who provide services to patrons at Great Adventure directly and/or indirectly at through their employees, servants, agents, individuals, managers, ride operators, disability services office personnel, park attendants, and/or maintenance workers, and who participated in the operation and maintenance of "the Joker" ride on or before Mr. Davis August 10, 2019 visit to Great Adventure in Jackson, New Jersey.

18.     Defendant, ABC Corporations Nos. 5-10 are business(es), corporations and other jural entities responsible for manufacturing, designing, selling and/or distributing the Joker ride

and its component parts.

19.     Plaintiff hereby invokes the doctrines of *respondeat superior* and vicarious liability.

20.     At all times relevant herein, Defendants were acting as the agents and employees of each of the other Defendants, and were acting within the scope, purpose, and authority of that agency and employment

## JURISDICTION AND VENUE

21.      This Court has Jurisdiction to hear this matter pursuant to 28 U.S.C. §1332 (Diversity of Citizenship) because the citizenship of Plaintiff is diverse from that of all Defendants and the amount in controversy is in excess of $75,000.00.

22.     Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C §1931(b)(2).

23.     A substantial part of the events or omissions giving rise to the claim and/or a substantial part of the property that is the subject of the action is situated within the judicial district of the District of New Jersey at 1 Six Flags Blvd., Jackson Township, NJ 08527.

24.     As detailed elsewhere in this Complaint, Plaintiff's grievous injuries and damages arise out of his first and only ride on the thrill ride called "the Joker" while visiting the theme park, Great Adventure, located at 1 Six Flags Blvd., in Jackson Township, NJ 08527.

## FACTS GIVING RISE TO THE CAUSE OF ACTION

25.     At all times material, Mr. Davis was a paraplegic (T2 paraplegia).

26.     On August 10, 2019, Mr. Davis and four (4) of his friends presented to Six Flags Great Adventure in Jackson, New Jersey with pre-purchased tickets.

27.     At all times material, Mr. Davis was a business invitee at Great Adventure.

## A.  SIX FLAGS GREAT ADVENTURE

28.     Mr. Davis is a frequent patron of Great Adventure and regularly goes on rides; he is well known by the employees at Great Adventure.

29.     When he arrives, Mr. Davis typically goes to the Guest Relations office and advises that he is a paraplegic and wheelchair bound and requests information pertaining to rides that are safe for him.

30.     Upon entrance to the theme park on August 10, 2019, Mr. Davis proceeded to the Guest Relations office, as he usually does, to pick up a pass which afforded him special accommodations due to his paraplegia and inquire about rides that are safe for him.

31.     Six Flags Great Adventure claimed to "work closely with the manufacturer of each of [their] rides" and to "incorporates the manufacturers' guidelines" into its policies to create a "safe, comfortable, and convenient experience at the park."

32.     The Great Adventure Accessibility Guide states that riders of "the Joker" must "have two (2) functioning legs that include the knee absent of prosthetic devices".

33.     Even so, Great Adventure employees at the Guest Relations office advised Mr. Davis that "the Joker" ride was safe and appropriate for Mr. Davis to ride.

34.     Great Adventure provided Mr. Davis with no additional warnings, instructions, information, or advice concerning his ability to ride "the Joker" despite knowing of his medical condition and physical disability.

35.     After leaving the Guest Relations office, Mr. Davis and his friends rode the "skyScreamer" and "Kingda Ka" rides without incident.

36.      Mr. Davis and his friends proceeded to "the Joker" where they entered the line for the ride and made their way to the line's beginning.

37.     Upon inquiry by Mr. Davis a ride attendant/operator advised Mr. Davis that "the Joker" was safe for an individual with paraplegia to ride.

38.     The ride attendant/operator also warned Mr. Davis and his friends that his wheelchair would have to navigate a high curb for Mr. Davis to gain access to the ride entry area.

39.      After Mr. Davis' friends lifted Mr. Davis' wheelchair over the curb and into the ride entry area and Mr. Davis waited for his turn to embark on the ride, Mr. Davis asked a second ride attendant/operator if "the Joker" was safe for a person with paraplegia to ride.

40.     The ride attendant/operator told Mr. Davis that it was his first day working on "the Joker" and that he was unfamiliar with "the Joker's" operation, safety, or procedures for an individual with paraplegia.

41.     There were no visible warnings or instructions for riders with paraplegia, like Mr. Davis, posted at or near the ride's entry area nor anywhere along the path for the line to "the Joker".

42.     When it came to be his turn, Mr. Davis entered one of the five cars and was seated on "the Joker".

43.     The ride's operators/attendants failed to secure his legs.

44.     The only restraint was a shoulder bar and waist.

45.     Mr. Davis was not provided with any supplemental restraint harness by the ride's operators/attendants.

46.     Mr. Davis' legs hung freely as he was seated.

**B.  THE JOKER**

47.     The Joker at Great Adventure is one of the four (4) "the Joker" thrill rides located at theme parks leased, owned, operated, managed, controlled, and/or possessed by Six Flags across the United States, including Six Flags Great America, Six Flags Over Texas, and Six Flags New

England.

48.   Defendants, SSTech, SSWWI, and RMC designed, manufactured, marketed, and/or sold "the Joker" to defendants, Six Flags and/or Great Adventure.

49.   The fourth-dimension roller coaster has free spinning seats positioned on the outside of the roller coaster track.

50.   The Joker ride begins by climbing an approximately one hundred twenty (120) foot vertical rise before plummeting into a steep drop and accelerate velocity along a track with a change in direction as well as backward and forward flips.

51.   During its operation, the cars spin freely based on factors such as gravity and rider weight in the cars.

52.   On the first and only occasion that Mr. Davis rode the Joker, the ride began its operation at a slow speed and then quickly increased the velocity substantially.

53.   As the ride accelerated velocity, the dynamic forces of the ride caused Mr. Davis' unsecured and unrestrained legs to flail wildly about the outside of the coaster and, at times, hit the restraint bar, resulting in several severe lower extremity fractures, including femur fractures.

54.   No Defendant warned patrons with paraplegia like Mr. Davis of the significant risk of serious injury that would result from riding the Joker.

55.   To make matters worse, all Defendants knew and/or should have known that patrons who were paraplegic faced significant risk of serious injury as a result of riding the Joker.

56.   At theme parks owned and operated by Six Flags, paraplegic patrons sustained substantially similar injuries as a result of riding substantially similar, fourth-dimension roller coasters without leg restraints including in 2005 and in 2010.

### C.   THE INJURIES

57.   As a direct and proximate result of riding the Joker, Mr. Davis sustained numerous injuries, losses and damages including, but not limited to:

   a)  Left distal femur fracture;

   b)  Right distal tibia/fibula fracture;

   c)  Injury to the bones, tissues, muscles, and nerves in his lower extremities;

   d)   Surgical intervention, including left distal femur ORIF and right distal tibia/fibula CR casting and ORIF;

   e)  Injury to the bones, tissues, muscles, and nerves of his spine; and

   f)  Need for future medical therapies, treatments, and interventions.

58.   As a direct and proximate result of the aforesaid negligence, carelessness, and recklessness of Defendants herein, their agents, servants, employees, and/or ostensible agents, Mr. Davis suffered severe and permanent injuries including, but not limited to, prolonged severe and unrelenting pain and suffering, emotional distress, mental anguish, loss of enjoyment of life and life's pleasures.

59.   As a direct and proximate result of the aforesaid negligence, carelessness, and recklessness of Defendants, their agents, servants, employees, and/or ostensible agents, Mr. Davis has been or will obligated to receive and undergo medical attention and care and to expend various sums of money or incur various expenses and may be obliged to continue to expend such sums or incur such expenditures for an indefinite time in the future.

60.    As a direct and proximate result of the aforesaid negligence, carelessness, and recklessness of Defendants, their agents, servants, employees, and/or ostensible agents, Mr. Davis has suffered a severe loss of earning and an impairment of earning capacity and power.

61.     As a direct and proximate result of the aforesaid negligence, carelessness, and recklessness of Defendants, their agents, servants, employees, and/or ostensible agents, Mr. Davis was caused to suffer severe, pain, inconvenience, psychological pain and has been deprived in the future of life's pleasures.

## THE CAUSES OF ACTION AND CLAIMS

### COUNT I - NEGLIGENCE
### PLAINTIFF v. DEFENDANTS, SIX FLAGS, GREAT ADVENTURE, JOHN and JANE DOES NOS. 1-5, and ABC CORPORATIONS NOS. 1-5

62.     Plaintiff hereby incorporates by reference the allegations contained within the preceding paragraphs as if the same were set forth more fully at length herein.

63.     At all times material hereto, Mr. Davis was a business-invitee and/or business guest of the Six Flags and/or Great Adventure who presented to Great Adventure at the express and/or implied invitation of defendants and within the scope of his invitation.

64.     Defendants were at all times material apprised of Mr. Davis medical condition as a T2 paraplegic.

65.     Defendants, Six Flags, Great Adventure, John and Jane Doe Nos. 1-5, and ABC Corporations Nos. 1-5, owed the plaintiff a heightened duty to exercise reasonable care and vigilance in the maintenance of the premises, to protect the plaintiff from foreseeable harm and to prevent injury and damages to Mr. Davis, and to provide reasonable warning to Mr. Davis of harm that may result to him on account of riding on the thrill rides, including the Joker, at their theme park.

66.     Through past-experience, claims, and litigation, all Defendants had actual and/or constructive notice that patrons who were paraplegic would suffer serious, grievous, and life-threatening injuries riding the Joker and substantially similar fourth-dimension roller coasters.

67.     Defendants, Six Flags, Great Adventure, John and Jane Doe Nos. 1-5, and ABC Corporations Nos. 1-5, had ample time and opportunity to warn Mr. Davis of the harm that may befall him from riding on a fourth-dimension roller coaster where his legs were unsecured but failed to do so resulting in serious injuries, damages, and losses to Mr. Davis.

68.     The careless, negligent, and reckless conduct of defendant, Six Flags, consisted of one or more of the following:

a.   Failing to make the premises safe;

b.   Misrepresenting the safety of the ride to Plaintiff;

c.   Concealing the risks of the ride to Plaintiff and other individuals with paraplegia;

d.   Negligently misrepresenting to Plaintiff and other consumers that the Joker and substantially similar fourth dimension roller coasters were standard and typical amusement rides with no extraordinary safety risks for users without use of two functioning legs;

e.   Permitting Plaintiff to ride the Joker without having two functioning legs;

f.   Failing to supply Plaintiff with a supplemental restraint harness;

g.   Failing to warn Plaintiff of the risks of riding the Joker ride to an individual with paraplegia that the dynamic forces of the ride would cause his unsecured legs to unnaturally flail and torque, and violently strike parts of the car while riding the roller coaster;

h.   Failing to secure Plaintiff's legs so they would be stable and immovable;

i.   Failing to make a reasonable effort to seat Mr. Davis in a car and/or position where he was least likely to suffer injury as a result of his medical condition;

j.   Failing to make a calculated effort properly calculate the magnetic kickers on the Fourth-dimension roller coaster, which were adjustable and allowed cars to spin freely based on gravity and rider weight, so as to avoid risk to riders of the Joker including Mr. Davis;

k.   Failing to maintain the Joker;

l.  Failing to make proper inspections of the Joker;

m.  Failing to properly and adequately train staff on operation, access, and safety of fourth dimension rollercoaster as it relates to guest access and use for individuals like Plaintiff with a medical condition of paraplegia;

n.  Failing to properly and adequately train staff, including managers, employees, agents, attendants, operators and information ambassadors;

o.  Failing to promulgate, implement, and follow proper and adequate safety and accessibility recommendations for the Joker ride;

p.  Failing to craft a disability access guide for patrons based upon defendant's knowledge and experience attendant to the risks of the ride design;

q.  Failing to promulgate and implement adequate policies, procedures, protocols relating to park safety and warnings for guests with medical disabilities;

r.  Failing to promulgate and implement adequate policies, procedures, protocols relating to ride accessibility for guests with medical disabilities;

s.  Failing to maintain standards incumbent of an amusement park to provide safe and proper rides to customers;

t.  Failing to require and supply proper and adequate accommodations for plaintiff, warn plaintiff and other similarly situated individuals of the risks of the Joker ride, or else exclude plaintiff and similarly situated individuals with safety issues;

u.  Vicarious liability for the conduct and inaction of Great Adventure and/or their employees, servants, agents, individuals, managers, ride operators, disability services office personnel, park attendants, and/or maintenance workers;

v.  Failing to train and supervise Great Adventure and/or their employees, servants, agents, individuals, managers, ride operators, disability services office personnel, park attendants, and/or maintenance workers; and,

w.  Such other acts of negligence which may be discovered up to the time of Trial.

69.  The careless, negligent, and reckless conduct of defendant, Great Adventure,

consisted of one or more of the following:

a.  Failing to make the premises safe;

b.  Misrepresenting the safety of the ride to Plaintiff;

c.  Concealing the risks of the ride to Plaintiff and other individuals with paraplegia;

d.  Negligently misrepresenting to Plaintiff and other consumers that the Joker and substantially similar fourth dimension roller coasters were standard and typical amusement rides with no extraordinary safety risks for users without use of two functioning legs;

e.  Permitting Plaintiff to ride the Joker without having two functioning legs;

f.  Failing to supply Plaintiff with a supplemental restraint harness;

g.  Failing to warn Plaintiff of the risks of riding the Joker ride to an individual with paraplegia that the dynamic forces of the ride would cause his unsecured legs to unnaturally flail and torque, and violently strike parts of the car while riding the roller coaster;

h.  Failing to secure Plaintiff's legs so they would be stable and immovable;

i.  Failing to make a reasonable effort to seat Mr. Davis in a car and/or position where he was least likely to suffer injury as a result of his medical condition;

j.  Failing to make a calculated effort properly calculate the magnetic kickers on the Fourth-dimension roller coaster, which were adjustable and allowed cars to spin freely based on gravity and rider weight, so as to avoid risk to riders of the Joker including Mr. Davis;

k.  Failing to maintain the Joker;

l.  Failing to make proper inspections of the Joker;

m.  Failing to properly and adequately train staff on operation, access, and safety of fourth dimension rollercoaster as it relates to guest access and use for individuals like Plaintiff with a medical condition of paraplegia;

n.  Failing to properly and adequately train staff, including managers, employees, agents, attendants, operators and information

ambassadors;

o.  Failing to promulgate, implement, and follow proper and adequate safety and accessibility recommendations for the Joker ride;

p.  Failing to craft a disability access guide for patrons based upon defendant's knowledge and experience attendant to the risks of the ride design;

q.  Failing to promulgate and implement adequate policies, procedures, protocols relating to park safety and warnings for guests with medical disabilities;

r.  Failing to promulgate and implement adequate policies, procedures, protocols relating to ride accessibility for guests with medical disabilities;

s.  Failing to maintain standards incumbent of an amusement park to provide safe and proper rides to customers;

t.  Failing to require and supply proper and adequate accommodations for plaintiff, warn plaintiff and other similarly situated individuals of the risks of the Joker ride, or else exclude plaintiff and similarly situated individuals with safety issues;

u.  Such other acts of negligence which may be discovered up to the time of Trial.

70.    The careless, negligent, and reckless conduct of defendants, John and Jane Does Nos. 1-5, consisted of one or more of the following:

a.  Failing to make the premises safe;

b.  Misrepresenting the safety of the ride to Plaintiff;

c.  Concealing the risks of the ride to Plaintiff and other individuals with paraplegia;

d.  Negligently misrepresenting to Plaintiff and other consumers that the Joker and substantially similar fourth dimension roller coasters were standard and typical amusement rides with no extraordinary safety risks for users without use of two functioning legs;

e.  Permitting Plaintiff to ride the Joker without having two functioning legs;

f.  Failing to supply Plaintiff with a supplemental restraint harness;

g.  Failing to warn Plaintiff of the risks of riding the Joker ride to an

individual with paraplegia that the dynamic forces of the ride would cause his unsecured legs to unnaturally flail and torque, and violently strike parts of the car while riding the roller coaster;

h. Failing to secure Plaintiff's legs so they would be stable and immovable;

i. Failing to make a reasonable effort to seat Mr. Davis in a car and/or position where he was least likely to suffer injury as a result of his medical condition;

j. Failing to make a calculated effort properly calculate the magnetic kickers on the Fourth-dimension roller coaster, which were adjustable and allowed cars to spin freely based on gravity and rider weight, so as to avoid risk to riders of the Joker including Mr. Davis;

k. Failing to maintain the Joker;

l. Failing to make proper inspections of the Joker;

m.  Failing to properly and adequately train staff on operation, access, and safety of fourth dimension rollercoaster as it relates to guest access and use for individuals like Plaintiff with a medical condition of paraplegia;

n. Failing to properly and adequately train staff, including managers, employees, agents, attendants, operators and information ambassadors;

o. Failing to promulgate, implement, and follow proper and adequate safety and accessibility recommendations for the Joker ride;

p. Failing to craft a disability access guide for patrons based upon defendant's knowledge and experience attendant to the risks of the ride design;

q. Failing to promulgate and implement adequate policies, procedures, protocols relating to park safety and warnings for guests with medical disabilities;

r. Failing to promulgate and implement adequate policies, procedures, protocols relating to ride accessibility for guests with medical disabilities;

s. Failing to maintain standards incumbent of an amusement park to provide safe and proper rides to customers;

t. Failing to require and supply proper and adequate accommodations for plaintiff, warn plaintiff and other similarly situated individuals of the risks of the Joker ride, or else exclude plaintiff and similarly situated individuals with safety issues;

u. Such other acts of negligence which may be discovered up to the time of Trial.

71.     The careless, negligent, and reckless conduct of defendants, ABC Corporations Nos. 1-5, consisted of one or more of the following:

a.  Failing to make the premises safe;

b.  Misrepresenting the safety of the ride to Plaintiff;

c.  Concealing the risks of the ride to Plaintiff and other individuals with paraplegia;

d.  Negligently misrepresenting to Plaintiff and other consumers that the Joker and substantially similar fourth dimension roller coasters were standard and typical amusement rides with no extraordinary safety risks for users without use of two functioning legs;

e.  Permitting Plaintiff to ride the Joker without having two functioning legs;

f.  Failing to supply Plaintiff with a supplemental restraint harness;

g.  Failing to warn Plaintiff of the risks of riding the Joker ride to an individual with paraplegia that the dynamic forces of the ride would cause his unsecured legs to unnaturally flail and torque, and violently strike parts of the car while riding the roller coaster;

h.  Failing to secure Plaintiff's legs so they would be stable and immovable;

i.  Failing to make a reasonable effort to seat Mr. Davis in a car and/or position where he was least likely to suffer injury as a result of his medical condition;

j.  Failing to make a calculated effort properly calculate the magnetic kickers on the Fourth-dimension roller coaster, which were adjustable and allowed cars to spin freely based on gravity and rider weight, so as to avoid risk to riders of the Joker including Mr. Davis;

k.  Failing to maintain the Joker;

l.  Failing to make proper inspections of the Joker;

m.   Failing to properly and adequately train staff on operation, access, and safety of fourth dimension rollercoaster as it relates to guest access and use for individuals like Plaintiff with a medical condition of paraplegia;

n.  Failing to properly and adequately train staff, including managers, employees, agents, attendants, operators and information ambassadors;

o.  Failing to promulgate, implement, and follow proper and adequate safety and accessibility recommendations for the Joker ride;

p.  Failing to craft a disability access guide for patrons based upon

defendant's knowledge and experience attendant to the risks of the
ride design;

q.  Failing to promulgate and implement adequate policies, procedures,
protocols relating to park safety and warnings for guests with
medical disabilities;

r.  Failing to promulgate and implement adequate policies, procedures,
protocols relating to ride accessibility for guests with medical
disabilities;

s.  Failing to maintain standards incumbent of an amusement park to
provide safe and proper rides to customers;

t.  Failing to require and supply proper and adequate accommodations
for plaintiff, warn plaintiff and other similarly situated individuals
of the risks of the Joker ride, or else exclude plaintiff and similarly
situated individuals with safety issues;

u.  Such other acts of negligence which may be discovered up to the
time of Trial.

72.    As a direct and proximate result of the careless, negligent, and reckless conduct of

defendants, Six Flags, Great Adventure, John and Jane Doe Nos. 1-5, and ABC Corporations Nos.

1-5, as described more fully herein, Mr. Davis sustained the injuries, damages, and losses described

earlier in this Complaint.

73.    The injuries, damages, and losses sustained by Mr. Davis were a direct and

proximate result of the negligence, carelessness, and tortious conduct of the defendants, Six Flags,

Great Adventure, John and Jane Doe Nos. 1-5, and ABC Corporations Nos. 1-5, and were not due

to any act or failure to act on the part of Mr. Davis.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Six Flags, Great

Adventure, John and Jane Doe Nos. 1-5, and ABC Corporations Nos. 1-5, in excess of the amount

of $75,000.00 together with costs, interest, and any other relief the Court deems just and equitable

under the law to which the Plaintiff is entitled.

**COUNT II – STRICT LIABILITY – DESIGN DEFECT**
**PLAINTIFF v. DEFENDANTS, SSTECH, SSWWI, RMC, JOHN and JANE DOES NOS.**
**5-10, and ABC CORPORATIONS NOS. 5-10**

74.    Plaintiff hereby incorporates by reference the allegations contained within the preceding paragraphs as if the same were set forth more fully at length herein.

75.    The Joker ride provides no warnings or instructions that use of the product could endanger the health, welfare, and safety of foreseeable riders including individuals with physical disabilities like Mr. Davis who do not have use of their lower extremities.

76.    At the time and place the defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, distributed and sold the Joker it was in a defective condition rendering it unfit, unsuitable, and unsafe for its anticipated use in violation of the New Jersey Products Liability Act, 2A:58C-2

77.    The injuries, damages, and harm suffered by plaintiff, Lester Davis, were directly and proximately caused by a defectively manufactured and/or designed fourth-dimension roller coaster, "the Joker", which defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, distributed and/or placed into the stream of interstate commerce.

78.    "The Joker" was defective and contained dangerous propensities and characteristics which made the product unfit to place into the stream of interstate commerce, including but not limited to the following:

    a.    The Joker was distributed and/or sold in a defective condition, and is unreasonably dangerous;

    b.    The Joker was designed in a manner as to render each defective and unreasonably dangerous;

    c.    The Joker was designed, manufactured, distributed and/or sold in a defective condition which defect caused individuals like Mr. Davis without use of their legs to ride the fourth-dimension coaster with their lower extremities unsecured, flailing uncontrollably, and at risk for serious injury due to the dynamics of the ride, while using the product/ride within

its foreseeable use;

d.   The design defects in the Joker include, but are not limited to, defects in that a rider's lower extremities are unsecured and unrestrained such that individuals with paraplegia will suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use, endangering the health, welfare and safety of users, like the accident described herein;

e.   The Joker and its components were not properly inspected and tested;

f.   The Joker lacked proper warnings and/or instructions to advise or warn about the dangers associated with the phenomenon that riders without use of their legs would suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use;

g.   The Joker lacked adequate warnings to advise consumers of the dangerous potential that riders without use of their legs would suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use which posed a grave danger to the health, welfare and safety of consumers, including Plaintiff;

h.   Adequate warnings, warning stickers, instructions, manuals, necessary for the safe use and operation of the Joker were not provided for the benefit and safety of the foreseeable end users;

i.   At the time of the design and manufacture of the Joker involved in August 10, 2019 incident, an alternative, safer, and practicable product existed which did not have the propensity for causing injury to riders without use of their legs due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use; and

j.   The defects in the Joker existed when the subject product left the hands of Defendants and was placed into the stream of commerce;

79.      If the design and manufacture of the Joker ride involved in the august 10, 2019 incident incorporated and/or included the alternative, safer, and practicable design existing at the time of the design and manufacture of the product in controversy, the injuries suffered by Lester Davis, specifically the lower extremity fractures and resultant sequelae would not have occurred and/or would have been less severe.

80.      The Defendants' conduct of continuing to permit foreseeable users of the Joker,

including but not limited to Lester Davis, to use/ride the Joker with the actual knowledge that the product was prone cause injury to riders without use of their legs due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use endangered the health, welfare and safety of those users.

81.     The Defendants' conduct of continuing to permit foreseeable users of the Joker, including but not limited to Lester Davis, to use/ride the Joker directly and proximately caused serious and permanent injuries, including Plaintiff's.

82.     The Defendants' conduct of continuing to permit foreseeable users of the Joker, including but not limited to Lester Davis, to use the Joker without eliminating and/or mitigating those defects and/or dangerous propensities caused harmful consequences to the foreseeable users, such as the Plaintiff.

83.     The Defendants' conduct of in failing to warn or institute a program to warn, recall and/or remove the Joker from the stream of commerce is intentional, reckless and done with evil motive and reckless indifference for the rights and safety of others such as Lester Davis.

84.     As a direct and proximate result of the negligence, intentional and reckless conduct, and other liability-producing conduct of the Defendants, Lester Davis suffered serious, severe, and painful injuries as described in this Complaint.

85.     As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has been disabled and will into the future be disabled from performing his usual duties, occupations, and advocations, with a consequent loss and impairment of earnings, earning capacity, earning power, and earning potential.

86.     As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has in the past and may in the future be obligated to expend sums of

money and to incur various expenses for medical care, diagnosis, and treatment, including, but not limited to, medicines, medical care, hospitalization, counseling, therapy, physical therapy, occupational therapy, housing, and transportation, all to his great detriment and loss.

87.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has suffered in the past and will continue to suffer in the future, excruciating and agonizing pain, suffering, mental anguish, emotional distress, humiliation, limitation, and a restriction of life's various and expected activities, pursuits, and pleasures.

**WHEREFORE**, Plaintiff demands judgment against Defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, in excess of the amount of $75,000.00 together with costs, interest, and any other relief the Court deems just and equitable under the law to which the Plaintiff is entitled.

### COUNT III – STRICT LIABILITY – MANUFACTURING DEFECT
**PLAINTIFF v. DEFENDANTS, SSTECH, SSWWI, RMC, JOHN and JANE DOES NOS. 5-10, and ABC CORPORATIONS NOS. 5-10**

88.    Plaintiff hereby incorporates by reference the allegations contained within the preceding paragraphs as if the same were set forth more fully at length herein.

89.    The Joker ride was not reasonably safe for its intended use and was defective as described herein as a matter of law with respect to the manufacturer, in that the manufacture deviated materially from the design and manufacturing specifications in such a manner as to pose unreasonable risks of serious bodily harm to Lester Davis.

90.    provides no warnings or instructions that use of the product could endanger the health, welfare, and safety of foreseeable riders including individuals with physical disabilities like Mr. Davis who do not have use of their lower extremities.

91.    At the time and place the defendants, SSTech, SSWWI, RMC, John and Jane Doe

Nos. 5-10, and ABC Corporations Nos. 5-10, distributed and sold the Joker it was in a defective condition rendering it unfit, unsuitable, and unsafe for its anticipated use in violation of the New Jersey Products Liability Act, 2A:58C-2

92.     The injuries, damages, and harm suffered by plaintiff, Lester Davis, were directly and proximately caused by a defectively manufactured and/or designed fourth-dimension roller coaster, "the Joker", which defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, distributed and/or placed into the stream of interstate commerce.

93.     "The Joker" was defective and contained dangerous propensities and characteristics which made the product unfit to place into the stream of interstate commerce, including but not limited to the following:

a. The Joker was distributed and/or sold in a defective condition, and is unreasonably dangerous;

b. The Joker was designed in a manner as to render each defective and unreasonably dangerous;

c. The Joker was designed, manufactured, distributed and/or sold in a defective condition which defect caused individuals like Mr. Davis without use of their legs to ride the fourth-dimension coaster with their lower extremities unsecured, flailing uncontrollably, and at risk for serious injury due to the dynamics of the ride, while using the product/ride within its foreseeable use;

d. The design defects in the Joker include, but are not limited to, defects in that a rider's lower extremities are unsecured and unrestrained such that individuals with paraplegia will suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use, endangering the health, welfare and safety of users, like the accident described herein;

e. The Joker and its components were not properly inspected and tested;

f. The Joker lacked proper warnings and/or instructions to advise or warn about the dangers associated with the phenomenon that riders without use of their legs would suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use;

g. The Joker lacked adequate warnings to advise consumers of the dangerous

potential that riders without use of their legs would suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use which posed a grave danger to the health, welfare and safety of consumers, including Plaintiff;

h. Adequate warnings, warning stickers, instructions, manuals, necessary for the safe use and operation of the Joker were not provided for the benefit and safety of the foreseeable end users;

i. At the time of the design and manufacture of the Joker involved in August 10, 2019 incident, an alternative, safer, and practicable product existed which did not have the propensity for causing injury to riders without use of their legs due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use; and

j. The defects in the Joker existed when the subject product left the hands of Defendants and was placed into the stream of commerce;

94.     If the design and manufacture of the Joker ride involved in the august 10, 2019 incident incorporated and/or included the alternative, safer, and practicable design existing at the time of the design and manufacture of the product in controversy, the injuries suffered by Lester Davis, specifically the lower extremity fractures and resultant sequelae would not have occurred and/or would have been less severe.

95.     The Defendants' conduct of continuing to permit foreseeable users of the Joker, including but not limited to Lester Davis, to use/ride the Joker with the actual knowledge that the product was prone cause injury to riders without use of their legs due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use endangered the health, welfare and safety of those users.

96.     The Defendants' conduct of continuing to permit foreseeable users of the Joker, including but not limited to Lester Davis, to use/ride the Joker directly and proximately caused serious and permanent injuries, including Plaintiff's.

97.     The Defendants' conduct of continuing to permit foreseeable users of the Joker,

including but not limited to Lester Davis, to use the Joker without eliminating and/or mitigating those defects and/or dangerous propensities caused harmful consequences to the foreseeable users, such as the Plaintiff.

98.     The Defendants' conduct of in failing to warn or institute a program to warn, recall and/or remove the Joker from the stream of commerce is intentional, reckless and done with evil motive and reckless indifference for the rights and safety of others such as Lester Davis.

99.     As a direct and proximate result of the negligence, intentional and reckless conduct, and other liability-producing conduct of the Defendants, Lester Davis suffered serious, severe, and painful injuries as described in this Complaint.

100.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has been disabled and will into the future be disabled from performing his usual duties, occupations, and advocations, with a consequent loss and impairment of earnings, earning capacity, earning power, and earning potential.

101.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has in the past and may in the future be obligated to expend sums of money and to incur various expenses for medical care, diagnosis, and treatment, including, but not limited to, medicines, medical care, hospitalization, counseling, therapy, physical therapy, occupational therapy, housing, and transportation, all to his great detriment and loss.

102.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has suffered in the past and will continue to suffer in the future, excruciating and agonizing pain, suffering, mental anguish, emotional distress, humiliation, limitation, and a restriction of life's various and expected activities, pursuits, and pleasures.

**WHEREFORE**, Plaintiff demands judgment against Defendants, SSTech, SSWWI,

RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, in excess of the amount of $75,000.00 together with costs, interest, and any other relief the Court deems just and equitable under the law to which the Plaintiff is entitled.

<u>**COUNT IV – STRICT LIABILITY – FAILURE TO WARN**</u>
**PLAINTIFF v. DEFENDANTS, SSTECH, SSWWI, RMC, JOHN and JANE DOES NOS. 5-10, and ABC CORPORATIONS NOS. 5-10**

103.    Plaintiff hereby incorporates by reference the allegations contained within the preceding paragraphs as if the same were set forth more fully at length herein.

104.    The Joker ride provides no warnings or instructions that use of the product could endanger the health, welfare, and safety of foreseeable riders including individuals with physical disabilities like Mr. Davis who do not have use of their lower extremities.

105.    At the time and place the defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, distributed and sold the Joker it was in a defective condition rendering it unfit, unsuitable, and unsafe for its anticipated use in violation of the New Jersey Products Liability Act, 2A:58C-2

106.    The injuries, damages, and harm suffered by plaintiff, Lester Davis, were directly and proximately caused by a defectively manufactured and/or designed fourth-dimension roller coaster, "the Joker", which defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, distributed and/or placed into the stream of interstate commerce.

107.    "The Joker" was defective and contained dangerous propensities and characteristics which made the product unfit to place into the stream of interstate commerce and defective as a matter of law due to the lack of appropriate and necessary warnings, including but not limited to the following:

      a.    The Joker's propensities to be unsafe and unreasonably dangerous;

      b.    The Joker's propensities to cause individuals like Mr. Davis without use

of their legs who ride the fourth-dimension coaster with their lower extremities unsecured, to suffer flailing uncontrollably, and serious injury due to the dynamics of the ride, while using the product/ride within its foreseeable use;

c.  The Joker's defects in that a rider's lower extremities are unsecured and unrestrained such that individuals with paraplegia will suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use, endangering the health, welfare and safety of users, like the accident described herein;

d.  The Joker and its components which were not properly inspected and tested;

e.  The Joker's dangers associated with the phenomenon that riders without use of their legs would suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use;

f.  The Joker's dangerous potential that riders without use of their legs would suffer injuries due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use which posed a grave danger to the health, welfare and safety of consumers, including Plaintiff;

g.  Adequate warnings, warning stickers, instructions, manuals, necessary for the safe use and operation of the Joker were not provided for the benefit and safety of the foreseeable end users;

h.  The defects in the Joker existed when the subject product left the hands of Defendants and was placed into the stream of commerce;

i.  The Joker's defects described herein;

j.  The hazards and risks associated with riding the Joker; and

k.  The hazards and risks associated with riding the Joker for individuals like Lester Davis who do not have use of their legs.

108.    If the design and manufacture of the Joker ride involved in the August 10, 2019 incident incorporated and/or included the alternative, safer, and practicable design existing at the time of the design and manufacture of the product in controversy, the injuries suffered by Lester Davis, specifically the lower extremity fractures and resultant sequelae would not have occurred and/or would have been less severe.

109.    The Defendants' conduct of continuing to permit foreseeable users of the Joker, including but not limited to Lester Davis, to use/ride the Joker with the actual knowledge that the product was prone cause injury to riders without use of their legs due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use endangered the health, welfare, and safety of those users.

110.    The Defendants' conduct of continuing to permit foreseeable users of the Joker, including but not limited to Lester Davis, to use/ride the Joker directly and proximately caused serious and permanent injuries, including Plaintiff's.

111.    The Defendants' conduct of continuing to permit foreseeable users of the Joker, including but not limited to Lester Davis, to use the Joker without eliminating and/or mitigating those defects and/or dangerous propensities caused harmful consequences to the foreseeable users, such as the Plaintiff.

112.    The Defendants' conduct of in failing to warn or institute a program to warn, recall and/or remove the Joker from the stream of commerce is intentional, reckless, and done with evil motive and reckless indifference for the rights and safety of others such as Lester Davis.

113.    As a direct and proximate result of the negligence, intentional and reckless conduct, and other liability-producing conduct of the Defendants, Lester Davis suffered serious, severe, and painful injuries as described in this Complaint.

114.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has been disabled and will into the future be disabled from performing his usual duties, occupations, and advocations, with a consequent loss and impairment of earnings, earning capacity, earning power, and earning potential.

115.    As a direct and proximate result of the liability-producing conduct of the

Defendants, Lester Davis has in the past and may in the future be obligated to expend sums of money and to incur various expenses for medical care, diagnosis, and treatment, including, but not limited to, medicines, medical care, hospitalization, counseling, therapy, physical therapy, occupational therapy, housing, and transportation, all to his great detriment and loss.

116.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has suffered in the past and will continue to suffer in the future, excruciating and agonizing pain, suffering, mental anguish, emotional distress, humiliation, limitation, and a restriction of life's various and expected activities, pursuits, and pleasures.

**WHEREFORE**, Plaintiff demands judgment against Defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, in excess of the amount of $75,000.00 together with costs, interest, and any other relief the Court deems just and equitable under the law to which the Plaintiff is entitled.

## COUNT V – BREACH OF EXPRESS WARRANTY
### PLAINTIFF v. DEFENDANTS, SSTECH, SSWWI, RMC, JOHN and JANE DOES NOS. 5-10, and ABC CORPORATIONS NOS. 5-10

117.    Plaintiff hereby incorporates by reference the allegations contained within the preceding paragraphs as if the same were set forth more fully at length herein.

118.    The Joker ride provides no warnings or instructions that use of the product could endanger the health, welfare, and safety of foreseeable riders including individuals with physical disabilities like Mr. Davis who do not have use of their lower extremities.

119.    At the time and place the defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, distributed and sold the Joker it was in a defective condition rendering it unfit, unsuitable, and unsafe for its anticipated use in violation of the New Jersey Products Liability Act, 2A:58C-2.

120.    Defendants made assurances as described herein to the general public that the Joker was safe and reasonably fit for its intended purposes.

121.    Defendants made assurances as described herein to Lester Davis directly, that the Joker was safe and reasonably fit for his intended purposes and use.

122.    Lester Davis chose to ride the Joker based upon Defendants' warranties and representations as described herein regarding the safety and fitness of the Joker.

123.    Lester Davis reasonably relied upon Defendants' express warranties and guarantees that the Joker was safe, merchantable, and reasonably fit for the intended purpose and use.

124.    Defendant breached these express warranties because the Joker was unreasonably dangerous and defective as described herein and now as Defendants had represented.

125.    Defendants' breach of their express warranties resulted in Lester Davis suffering serious, severe, and painful injuries as described in this Complaint.

126.    As a direct and proximate result of the negligence, intentional, and reckless conduct, and other liability-producing conduct of the Defendants, Lester Davis suffered serious, severe, and painful injuries as described in this Complaint.

127.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has been disabled and will into the future be disabled from performing his usual duties, occupations, and advocations, with a consequent loss and impairment of earnings, earning capacity, earning power, and earning potential.

128.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has in the past and may in the future be obligated to expend sums of money and to incur various expenses for medical care, diagnosis, and treatment, including, but not limited to, medicines, medical care, hospitalization, counseling, therapy, physical therapy,

occupational therapy, housing, and transportation, all to his great detriment and loss.

129.     As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has suffered in the past and will continue to suffer in the future, excruciating and agonizing pain, suffering, mental anguish, emotional distress, humiliation, limitation, and a restriction of life's various and expected activities, pursuits, and pleasures.

**WHEREFORE**, Plaintiff demands judgment against Defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, in excess of the amount of $75,000.00 together with costs, interest, and any other relief the Court deems just and equitable under the law to which the Plaintiff is entitled.

**COUNT VI – BREACH OF IMPLIED WARRANTY**
**PLAINTIFF v. DEFENDANTS, SSTECH, SSWWI, RMC, JOHN and JANE DOES NOS.**
**5-10, and ABC CORPORATIONS NOS. 5-10**

130.     The Joker ride provides no warnings or instructions that use of the product could endanger the health, welfare, and safety of foreseeable riders including individuals with physical disabilities like Mr. Davis who do not have use of their lower extremities.

131.     At the time and place the defendants, SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, distributed and sold the Joker it was in a defective condition rendering it unfit, unsuitable, and unsafe for its anticipated use in violation of the New Jersey Products Liability Act, 2A:58C-2.

132.     Defendants impliedly warranted that the Joker was merchantable and was fit for the ordinary purposes for which it was intended.

133.     When Lester Davis rode the Joker, he did so in the ordinary purpose and use for which it was intended.

134.     Lester Davis reasonably relied upon Defendants' implied warranties and

guarantees that the Joker was safe, merchantable, and reasonably fit for the intended purpose and use.

135.    Defendant breached these implied warranties because the Joker was unreasonably dangerous and defective as described herein and now as Defendants had represented.

136.    Defendants' breach of their implied warranties resulted in Lester Davis suffering serious, severe, and painful injuries as described in this Complaint.

137.    As a direct and proximate result of the negligence, intentional, and reckless conduct, and other liability-producing conduct of the Defendants, Lester Davis suffered serious, severe, and painful injuries as described in this Complaint.

138.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has been disabled and will into the future be disabled from performing his usual duties, occupations, and advocations, with a consequent loss and impairment of earnings, earning capacity, earning power, and earning potential.

139.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has in the past and may in the future be obligated to expend sums of money and to incur various expenses for medical care, diagnosis, and treatment, including, but not limited to, medicines, medical care, hospitalization, counseling, therapy, physical therapy, occupational therapy, housing, and transportation, all to his great detriment and loss.

140.    As a direct and proximate result of the liability-producing conduct of the Defendants, Lester Davis has suffered in the past and will continue to suffer in the future, excruciating and agonizing pain, suffering, mental anguish, emotional distress, humiliation, limitation, and a restriction of life's various and expected activities, pursuits, and pleasures.

**WHEREFORE**, Plaintiff demands judgment against Defendants, SSTech, SSWWI,

RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, in excess of the amount of $75,000.00 together with costs, interest, and any other relief the Court deems just and equitable under the law to which the Plaintiff is entitled.

**COUNT VII – VIOLATION OF THE NEW JERSEY CARNIVAL-AMUSEMENT RIDES SAFETY ACT (CARSA), N.J.S.A. 5:3-31 TO -59**
**PLAINTIFF v. ALL DEFENDANTS**

141.   Plaintiff hereby incorporates by reference the allegations contained within the preceding paragraphs as if the same were set forth more fully at length herein.

142.   The conduct of the Defendants, jointly, severally, and/or individually, by and through their agents, servants, employees, workmen, alter egos, subsidiaries, and/or ostensible violated the New Jersey Carnival-Amusement Rides Safety Act (CARSA), N.J.S.A. 5:3-31 et. seq.

143.   Defendants' failure to comply with the New Jersey Carnival-Amusement Rides Safety Act resulted in the injuries and losses suffered by Plaintiff, Lester Davis.

WHEREFORE, Plaintiff demands judgment against Defendants, Six Flags, Great Adventure,  SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, in excess of the amount of $75,000.00 together with costs, interest, and any other relief the Court deems just and equitable under the law to which the Plaintiff is entitled.

**COUNT VIII – PUNITIVE DAMAGES**
**PLAINTIFF v. ALL DEFENDANTS**

144.   Plaintiff hereby incorporates by reference the allegations contained within the preceding paragraphs as if the same were set forth more fully at length herein.

145.   Defendants made the Joker available to the public at Amusement Parks throughout the United States without doing adequate testing to ensure that the Joker was reasonably safe and fit for its intended use.

146.   Defendant ignored reports throughout the United States and elsewhere of the

Jokers' failures to perform as intended, which lead to the severe and debilitating injuries suffered by Mr. Davis and other individuals. Rather than doing adequate testing, providing adequate warnings, and/or alternatives designs, Defendants chose instead to continue to market and sell the Joker as safe and effective.

147.    Defendants knew the Joker was unreasonably dangerous, especially to individuals with physical disabilities like Mr. Davis who do not have use of their lower extremities.

148.    Defendants withheld material information from Mr. Davis and the public in general, regarding the safety of the Joker.

149.    Defendants knew and recklessly disregarded the fact that the Joker was prone to cause injury to riders without use of their legs due to their lower extremities flailing uncontrollably, and sometimes into the car, due to the dynamic forces of the ride during its foreseeable use and nonetheless endangered the health, welfare, and safety of those users causing debilitating and potentially life altering injuries with greater frequency than feasible alternatives and/or providing proper warnings and restrictions on use.

150.    Notwithstanding the foregoing, Defendants continue to market and the Joker to consumers, without disclosing the true risks associated with the Joker.

151.    Defendants' conduct as described herein shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences, thereby justifying an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants, Six Flags, Great Adventure,  SSTech, SSWWI, RMC, John and Jane Doe Nos. 5-10, and ABC Corporations Nos. 5-10, in excess of the amount of $75,000.00 together with costs, interest, and any other relief the Court deems just and equitable under the law to which the Plaintiff is entitled.

MESSA & ASSOCIATES, P.C.

BY:     _/s/ Alaina A. Gregorio_____
        JOSEPH L. MESSA, JR.
        ALAINA A. GREGORIO
        Attorneys for Plaintiff, Lester Davis
        2000 Academy Drive, Suite 200
        Mt. Laurel, New Jersey 08054
        (856) 810-9500/ Fax (856) 810-9918